Citation Nr: 1542449 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 07-26 110 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for right ankle arthritis.

2. Entitlement to an initial rating in excess of 10 percent for trochanteric bursitis of the right hip. 

3. Entitlement to an initial rating greater than 70 percent for depressive disorder.

4. Entitlement to an effective date earlier than February 14, 2002 for the award of service connection for depressive disorder.

5. Entitlement to an effective date earlier than December 6, 2000 for the award of service connection for trochanteric bursitis of the right hip.

6. Entitlement to service connection for right ankle edema. 

7. Entitlement to service connection for a bilateral foot disorder, claimed as frostbite of the feet, to include as secondary to service-connected residuals of a right medial malleolus fracture.
REPRESENTATION

Appellant represented by: Alabama Department of Veterans Affairs


ATTORNEY FOR THE BOARD

John Francis, Counsel


INTRODUCTION

The Veteran served on active duty from July 1982 to July 1985. 

This appeal to the Board of Veterans' Appeals (Board) arose from rating decisions of the RO in Montgomery, Alabama. 

In a February 2007 rating decision, the RO, in part, executed a Board decision granting service connection for right ankle arthritis and assigned an initial rating of 10 percent, effective October 10, 2000. In August 2007, the Veteran filed a notice of disagreement (NOD) with the initial rating for right ankle arthritis. A statement of the case (SOC) was issued in August 2014, and the Veteran filed a substantive appeal (via a VA Form 9) in September 2014.

In a May 2007 rating decision, the RO granted service connection for trochanteric bursitis of the right hip and assigned an initial rating of 10 percent, effective April 17, 2007. In August 2007, the Veteran filed an NOD. An SOC was issued in August 2014, and the Veteran filed a substantive appeal (via a VA Form 9) in September 2014.

In an April 2010 rating decision, the RO, in part, denied service connection for right ankle edema and for frostbite of the feet. In May 2010, the Veteran filed an NOD. An SOC was issued in December 2011, and the Veteran filed a substantive appeal (via a VA Form 9) in January 2012.

Additionally, in an April 2010 rating decision, the RO granted service connection for depressive disorder and assigned a 50 percent rating, effective April 16, 2009. In May 2010, the Veteran filed an NOD with the assigned rating and effective date. In an April 2011 rating decision, the RO granted an initial rating of 70 percent for depressive disorder, effective April 16, 2009. In correspondence the same month, the Veteran expressed agreement with the initial rating of 70 percent but continued to disagree with the effective date, contending that the effective date should be in January 2002. A December 2011 SOC addressed both the initial rating and effective date of award claims. In his January 2012 substantive appeal, the Veteran contended that the effective date should be October 10, 2000 when an informal claim was established by a VA clinician's outpatient treatment record of diagnosis of mood disorder. In August 2014, the RO granted an effective date of February 14, 2002, the earliest date when the Veteran was first seen by VA mental health clinicians and diagnosed with "rule-out" mood disorder. The RO determined that the earlier effective date of award had been satisfied in full on the basis that the Veteran had "asked for an effective date of 2002." In September 2014, the RO, inter alia, issued a supplemental SOC (SSOC) on the issue of entitlement to a rating greater than 70 percent for depressive disorder.

Because the Veteran has disagreed with the initial ratings assigned following the grant of service connection for right ankle arthritis, trochanteric bursitis of the right hip and depressive disorder, the Board characterized these claims in light of the distinction noted in Fenderson v. West, 12 Vet. App. 119, 126 (1999) (distinguishing initial rating claims from claims for increased ratings for already service-connected disability). 

During the course of the appeal for service connection for frostbite of the feet, lay and medical evidence also raised the issue of a bilateral foot disorder as secondary to service-connected residuals of a right medial malleolus fracture. The Board is required to weigh all theories of entitlement raised either by the claimant or by the evidence of record as part of the non-adversarial administrative adjudication process. Robinson v. Shinseki, 557 F.3d 1355, 1361 (Fed. Cir. 2009); see also Ingram v. Nicholson, 21 Vet.App. 232, 256 (2007) (the Secretary must look at the conditions stated and the causes averred in a pro se pleading to determine whether they reasonably suggest the possibility of a claim for a benefit under title 38, regardless of whether the appellant demonstrates an understanding that such a benefit exists or of the technical elements of such a claim). Therefore, the Board has recharacterized the claim for service connection for a bilateral foot disorder as captioned above. 

In April 2009, the Board, in part, remanded the claim for an initial rating in excess of 10 percent for trochanteric bursitis of the right hip for additional procedural development. 

In August 2014, the RO granted an earlier effective date of December 6, 2000 for service connection and a 10 percent rating for trochanteric bursitis of the right hip. As addressed below, an earlier effective date of award claim has been listed on the title page for procedural purposes only.

This appeal has been processed utilizing the Veterans Benefits Management System (VBMS), a paperless, electronic claims processing system. 

The Veteran filed a claim for clothing allowance in June 2001 and for service connection for a separate anxiety disorder in June 2010. In his January 2012 and September 2014 substantive appeals, the Veteran raised the issue of a rating in excess of 20 percent for right medial malleolar fracture. These issues but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015).

The Board's decision addressing the claim for service connection for right ankle edema is set forth below. The remaining claims on appeal are addressed in the remand following the order; these matters are being remanded to the AOJ. VA will notify the appellant when further action, on his part, is required.



FINDING OF FACT

The Veteran's occasional right lateral ankle swelling is a manifestation of his service-connected residuals of a right malleolar fracture and right ankle arthritis. 


CONCLUSION OF LAW

The claim of entitlement to service connection for right ankle edema is dismissed due to the absence of a controversy at issue. 38 U.S.C.A. § 7105(d) (West 2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1137; 38 C.F.R. § 3.303. Such a determination requires a finding of current disability that is related to an injury or disease in service. Watson v. Brown, 4 Vet. App. 309 (1993); see also Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Rabideau v. Derwinski, 
2 Vet. App. 141, 143 (1992). 

The Veteran served as a U.S. Army artilleryman with service in Germany. He contended in several statements and briefs that his right ankle edema is secondary to service-connected residuals of a right medial malleolar fracture. 

Service treatment records show that the Veteran sought treatment in February 1984 after twisting his ankle playing basketball. A physician's assistant (PA) noted pain on weight bearing, a reduced range of motion of the ankle, and pain on palpation of the anterior talar ligament with no edema and diagnosed a second degree inversion sprain. The PA prescribed a leg splint and 72 hours bed rest. Three days later, the Veteran reported continued pain and slight edema. The PA prescribed a walking cast that was removed at the end of the month. 

In a June 1986 discharge physical examination, the Veteran noted in the section for medical history only that he was in "good health," and the examining physician noted no foot or ankle abnormalities. 

The Veteran reported to the SSA that he worked from 1990 to July 2000 in manufacturing facilities that required extended standing, walking, and lifting 12 hours per day, 6 days per week. VA outpatient treatment records from 1992 to 1998 are silent for any foot or ankle symptoms. 

In September 1999, the Veteran's VA primary care physician noted the Veteran's report of right lower leg pain while walking barefoot for the past two months. The physician noted pain on dorsiflexion of the foot with no swelling or pes planus. The physician diagnosed ligamentous/muscle strain and advised the wearing of shoes. 

In February 2000, the Veteran returned to the clinic and reported increased pain in the entire right leg. X-rays showed a smooth periosteal reaction related to stress of uncertain etiology on the middle aspect of the fibular shaft at the level of the interosseous membrane. There was also evidence of an old fracture along the medial malleolus. In March 2000, the primary care physician evaluated the X-ray and noted the evidence of an old fracture but that the X-ray was otherwise "OK." The Veteran was limping and favoring the right ankle but there was no swelling. She ordered another X-ray to check for "probable" degenerative joint disease. She also noted on a prescription form that the Veteran had a chronic foot problem that required taking weight of the feet for 10-15 minutes every one to two hours. Another X-ray showed an old non-united avulsion of the medical malleolus with a prominent osteophyte from the os calcis. The Veteran was referred for an orthopedic evaluation at another VA facility. 

In April, June, and December 2000, orthopedic physicians noted the same history and recent symptoms and diagnosed moderate right ankle degenerative joint disease, bilateral flat but flexible feet, and prescribed arch supports. Additional X-rays showed the bone spur on the plantar aspect of the os calcis but well maintained joint space with no fractures, inconsistent with the diagnosis of moderate degenerative disease. 

In December 2000, a VA physician noted the history of the ankle injury in service and reviewed the X-rays obtained in March 2000. The Veteran reported that he continued to experience right ankle pain on weight bearing and had to quit work at a warehouse because he could no longer stand for 10-12 hours. On examination, the physician noted that the Veteran walked with a limp favoring the right ankle. There was limitation of range of motion without pain on motion or swelling. The physician noted tenderness along the lateral aspect with possible mild instability. 
Inconsistently, a concurrent X-ray showed a normal right ankle. The physician noted that the periosteal reaction along the fibular shaft could be related to the old injury but that the calcaneal spur was not related to the injury. The physician noted that his X-ray showed no arthritis but that the X-rays obtained earlier in the year reported moderate arthritis. 

In February 2001, the RO granted service connection for residuals of the old right medial malleolar fracture and a 10 percent rating, effective October 2000. The RO denied service connection for right ankle arthritis and a right leg disability. 

A July 2001 VA magnetic resonance imaging (MRI) report reflects edema around the ankle area consistent with the tissues surrounding the lateral malleolus but tendons were intact with no fluid collection. In July 2001, a private medical doctor examined and X-rayed the right ankle for a disability determination. The X-rays showed a very large heel spur under the calcaneus and a calcified body at the medial malleolus, but no other significant ankle abnormality. The private medical doctor remarked that the lateral side of the right ankle was painful and found limitation of motion in dorsi and plantar flexion. His impression was traumatic arthritis of the right ankle. 

The RO received the Veteran's claim for service connection for right ankle edema in January 2002. 

In April 2002, the Veteran testified before a Veterans Law Judge on the issue of service-connection for right ankle arthritis and for an increased rating for residuals of the old fracture of the right medical malleolus. Neither of these specific issues is currently on appeal. However, the Veteran provided testimony relevant to the history of these disabilities. The Veteran appeared at the hearing wearing a removable walking cast on the right lower leg for support that he reportedly used since 1991. He testified that he experienced constant pain, radiating from the right ankle up the lower leg to below the knee, and sometimes swelling during flare-ups. He could only stand for about 30 minutes. He reported the use of prescription pain medication for arthritis. 

In January 2003, the same VA physician noted a review of the claims file including the primary care and orthopedic consultation records, associated imaging studies, and the hearing testimony. On examination, the physician noted some limitation of range of motion without pain or swelling but with tenderness over the lateral malleolus. There were no neurological deficits. The physician did not observe, but did not rule out, additional limitations on flare-ups or with increased use. Concurrent X-rays showed a normal right leg and ankle with no indication of arthritic changes. The physician diagnosed residuals of a right ankle fracture but did not enter a diagnosis of arthritis. He found that there was no right leg disability other than pain extending a short distance from the site of the ankle fracture. 

In November 2006, the Board, in part, granted an initial rating of 20 percent for residuals of the right medial malleolar fracture and granted service connection for right ankle arthritis. Regarding the ankle arthritis, the Board found that the service-connected right ankle injury caused arthritis in the right ankle because X rays showed a very large bone spur and an MRI showed edema. There was also evidence of ankle limitation of motion and joint tenderness. The Board placed greatest probative weight on the observations of the private physician who found traumatic arthritis of the ankle, and on the observations of two VA medical professionals who also noted degenerative joint disease of the ankle. Regarding the rating for residuals of the fracture, the Board found that the criteria for a schedular 20 percent rating under 38 C.F.R. § 4.71a, Diagnostic Code 5271 more nearly approximated the impairment because of additional loss of function due to such factors as increased weakness associated with the diseased joint and pain during flare ups. The Board remanded the issue of service connection for a right leg or hip disorder. At that time, the issues of service connection for right ankle edema was not yet before the Board. 

VA outpatient treatment records in 2006 and 2007 show periodic treatment encounters in a podiatric clinic for right ankle and foot pain. Podiatrists noted calcaneal spurs, pes planus, and management of the pain with orthotic appliances. There were no opinions regarding a relationship between the ankle and foot disorders. 

In February 2007, the RO executed these awards and assigned a 10 percent rating for right ankle arthritis. Both awards were made effective October 10, 2000. 

In April 2007, the VA physician who performed examinations in 2000 and 2003 again noted a review of the claims file and reevaluated the Veteran's claim for service connection for a right leg disorder. During the examination, the Veteran pointed to the right greater trochanter as the location of his leg pain with flare-ups after weight bearing for short distances. Range of motion of the right hip was 95 degrees flexion, 30 degrees extension, 15 degrees internal rotation, and 45 degrees external rotation with pain and guarding but no additional loss of function on repetitive motion. The Veteran used a cane but no brace. An X-ray showed no fracture, dislocation, or focal bony destruction with well-preserved joint spaces. The physician diagnosed trochanter bursitis and found that the right hip disorder did not manifest in service but that the ankle fracture and limp aggravated the right hip bursitis. 

In August 2009, the Veteran completed health questionnaires and examinations in conjunction with his claim for SSA disability benefits. The Veteran reported that his only occupation was to act as a pastor in a church for two hours, once per week. In addition to lumbar spine and mental health symptoms, the Veteran reported that his ankle and hip pain precluded long periods of standing or performing work activities. Although the Veteran used a cane and limped favoring the right leg, a medical consultant noted that VA X-rays obtained in 2008 were normal and did not support the need for a cane. The consultant noted that the Veteran could not negotiate ladders but could occasionally climb stairs, stoop, kneel, crouch, and crawl on the job. In an administrative decision in April 2011, the SSA adjudicator referred to an examination by an orthopedic consultant who noted that the Veteran could lift 20 pounds, stand for one hour, walk for one minute, and sit for five hours at work and needed a cane for ambulation. He concluded that the Veteran could never climb, kneel, crawl, stoop, or crouch and that these limitations would preclude even sedentary work. Based largely on the testimony of the orthopedic consultant, SSA granted benefits for lumbar disc disease and for a mood disorder. 

In January 2010, a VA physician noted a review of the claims file, acknowledged that the Veteran had been awarded service connection for residuals of the right ankle fracture, right ankle arthritis, and bursitis of the right hip. 

Regarding the right ankle, the physician noted the Veteran's report of pain radiating to the lower leg and intermittent swelling on the outer aspect of the right ankle with instability after standing for five to ten minutes. The Veteran reported flare-up pain ten times per month and that he used a cane and formerly used a removable walking cast. On examination, the physician noted a range of motion of zero to 10 degrees dorsiflexion and zero to 25 degrees plantar flexion limited by pain and mild tenderness and swelling on the lateral side. There was no additional loss of function on three repetitions. A concurrent X-ray of the ankle was normal. The physician found that the etiology of the right ankle edema could not be determined but was not caused by or related to the right medial malleolar fracture because the edema was on the lateral side and manifested many years after the fracture. The physician did not comment whether the edema was caused or aggravated by the service-connected right ankle arthritis. 

Regarding the right hip, the Veteran reported episodes of moderate right hip pain several times per week after extended standing or walking for more than five to ten minutes. Flare-up episodes occurred several times per month lasting for one day. On examination, range of motion of the right hip was zero to 90 degrees flexion, zero to 30 degrees extension, zero to 30 degrees abduction, zero to 25 degrees adduction, zero to 50 degrees external rotation, and zero to 40 degrees internal rotation, all limited by pain, body habitus, and age. There was no additional loss of function on three repetitions. A concurrent X-ray was normal. 

In a July 2010 written statement, a VA vocational rehabilitation case manager noted that the Veteran was eligible for an independent living program because it was not feasible for him to achieve a vocational goal. The Manager noted that the Veteran was not able to work and sustain gainful employment due to permanent disabilities. 

VA primary care records from 2010 through March 2015 continue to show reports by the Veteran of on-going right ankle and hip pain, prescription medication for pain and inflammation, and use of a cane. There was no additional medical intervention, imaging studies, or reports of worsening symptoms of the right ankle and hip. 

Here, the Board notes that the earliest clinical observation of ankle swelling associated with an old right medial malleolar fracture and arthritis of the right ankle was in a July 2001 MRI. The Board's November 2006 decision used the edema finding, in part, to support the award of service connection for right ankle arthritis. The Board observes that swelling is a manifestation of arthritis as noted in the criteria for Diagnostic Code 5003.
 
Therefore, the Board finds that the Veteran's occasional lateral ankle swelling, which first manifested after service, is a manifestation of his service-connected residuals of a right malleolar fracture and right ankle arthritis. As service connection for swelling, as a manifestation of his right ankle arthritis, has already been established, there is no "controversy" or justiciable issue currently before the Board. The claim, therefore, must be dismissed. 38 U.S.C.A. § 7105(d) (West 2015). See Shoen v. Brown, 6 Vet. App. 456, 457 (1994); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).



ORDER

The claim of entitlement to service connection for right ankle edema is dismissed.


REMAND

The Board's review of the claims file reveals that further AOJ action on the remaining claims on appeal is warranted. 

The Board first observes that the AOJ last addressed the initial rating claims in adjudicative actions in September 2014. Thereafter, the AOJ associated with the record relevant VA treatment records since March 2015. Additionally, the AOJ has date-stamped relevant records from the Social Security Administration (SSA) as being received in March 2015. As the Veteran has not waived AOJ consideration of this evidence - obtained by the AOJ - in the first instance, the Board remands these issues for readjudication.

With respect to the initial rating claim for depressive disorder, the Board observes that the Veteran appeared to express satisfaction with his assigned 70 percent rating in an April 2011 correspondence. Nonetheless, the AOJ has determined that this issue remains on appeal. As the AOJ has determined that a clear satisfaction of claim has not been expressed by the Veteran, the Board has listed this issue as continuing on appeal.

With respect to the effective date for the award of service connection for depressive disorder, the AOJ has determined that the Veteran's claim has been satisfied in full with an award of service connection effective February 14, 2002. However, in his January 2012 substantive appeal, the Veteran clearly argued his entitlement to an effective date extending to October 2000. Thus, the Board finds that the AOJ's award of an effective date to February 14, 2002 does not fully satisfy the Veteran's appeal and, thus, the claim remains on appeal.

With respect to the effective date of award for service connection for trochanteric bursitis of the right hip, an August 2014 AOJ rating decision awarded an effective date of December 6, 2000. In a VA Form 9 received in October 2014, the Veteran argued his entitlement to an effective date to October 2000. The Board construes this filing as a timely filed NOD. To date, the AOJ has not furnished the Veteran an SOC on this issue. As such, the Board must remand, not refer, this issue to the AOJ for issuance of an SOC. See Manlincon v. West, 12 Vet. App 238 (1999).

With respect to the service connection claim for bilateral foot disability, service treatment and personnel records show that the Veteran served in Germany for approximately 18 months. The Veteran credibly reported that he experienced extreme cold weather during field training in the winter months. 

Service treatment records show that the Veteran sought treatment in December 1982 for foot pain, numbness, and limitation of motion. A clinician referred the Veteran for an examination by a medical officer for possible frostbite. On examination the same day, the physician noted that the Veteran's feet were warm with no loss of reflexes and a full range of motion. The physician ordered the Veteran to return to duty. One week later, the Veteran again sought treatment for sore feet that he reported experiencing for the past two weeks. The Veteran was excused from cold weather exposure for another week. In early January 1983, a physician again examined the Veteran and noted warm feet with no loss of reflexes, sensation, or range of motion. The physician noted "doubt cold weather injury" but noted that the Veteran's boots were worn and required replacement. The Veteran was returned to full duty. In March 1983, the Veteran was again examined by a physician's assistant (PA) who noted the December/January duty restriction but with no diagnosis of frostbite. On examination, the PA noted only callouses as a cause for foot pain. The Veteran continued to serve in Germany over the winter of 1983-84 with no further complaints or limitations of duty in cold weather. 

In March 2000, a private physician noted on a prescription form that the Veteran had a chronic foot problem that required periodic rest during the workday. In October 2001, the RO received the Veteran's claim for service connection for frostbite of the feet, which he attributed to cold weather exposure in service. VA primary care clinicians noted the Veteran's report of pain primarily on the bottom of the feet and referred the Veteran for podiatry consultations. In January 2007, a podiatrist noted no dermatological or neurological deficits but X-rays showed spurring of the calcaneus and decreased calcaneal inclination angle. The podiatrist prescribed shoe inserts and orthotics. 

In January 2010, a VA physician examined the feet and noted the Veteran's reports of foot pain, burning, tingling, sensitivity to cold, and loss of hair on toes. On examination, the physician found no evidence of frostbite or residuals of a cold weather injury. The physician ruled out Raynaud's phenomena but diagnosed mild pes planus. However, the physician did not provide an opinion whether the reported symptoms and pes planus first manifested in service with the Veteran's foot pain attributed to improper boots, was caused or aggravated by any other aspect of service, or was secondary to the service-connected right ankle disabilities. 

A claimant's identification of the benefit sought does not require any technical precision. See Ingram v. Nicholson, 21 Vet. App. 232, 256-57 (2007). A claimant may satisfy this requirement by referring to a body part or system that is disabled or by describing symptoms of the disability. Brokowski v. Shinseki, 23 Vet. App. 79, 86-87 (2009); see also Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009) (to the effect that, when determining the scope of a claim, the Board must consider the claimant description of the claim; the symptoms the claimant describes; and the information the claimant submits or that the Secretary obtains in support of that claim.

Here, the Veteran's claim for service connection was for what he believed were cold weather injuries. Nevertheless, he has been diagnosed with spurring of the calcaneus, decreased calcaneal inclination angle, and pes planus. VA will obtain a medical opinion if the record, including lay or medical evidence, contains competent evidence of a disability that may be associated with an event, injury, or disease that occurred in service, but the record does not contain sufficient medical evidence to decide the claim. 38 U.S.C.A. § 5103A(d) (West 2014); McLendon v. Nicholson, 20 Vet. App. 79 (2006). Therefore, an additional medical opinion on the etiology of these foot disorders is necessary to decide the claim. 

Accordingly, the case is REMANDED for the following action:

1. Obtain all outstanding pertinent records of VA evaluation and/or treatment of the Veteran dated from March 2015. 

2. Send to the Veteran and his representative a letter requesting that the Veteran provide sufficient information, and if necessary, authorization to enable it to obtain any additional evidence pertinent to the claims on appeal that is not currently of record. Specifically request that the Veteran furnish, or furnish appropriate authorization to obtain, all outstanding, pertinent, private (non-VA) medical records. Additionally, advise him how to substantiate his claim on a secondary basis.

3. Following completion of the above, schedule the Veteran for appropriate examination to determine the nature and etiology of his bilateral foot disorder(s). The contents of the electronic claims folder must be available for examiner review. All appropriate testing should be conducted. 

The examiner must identify any foot disorder separate from manifestations of the service-connected residuals of a right medial malleolar fracture and right ankle arthritis, to include clarification as to whether the Veteran manifests a cold injury of the right and/or left foot. 

Based on a review of the claims file and the results of the Veteran's physical examination, and the Veteran's statements regarding the development and treatment of his claimed disorder, the examiner is asked to state whether it is at least as likely as not (i.e., a 50 percent or greater probability) that any current right and/or left foot disorder first manifested during active service, was caused or aggravated by any aspect of service including cold weather, or is caused or aggravated beyond the normal progress of the disorder by another service-connected disability including those of the right ankle. A complete rationale must be provided for any opinions expressed. 

4. Furnish the Veteran an SOC on the issue of entitlement to an effective date earlier than December 6, 2000 for the award of service connection for trochanteric bursitis of the right hip. The Veteran should be informed of his appellate rights and of the actions necessary to perfect an appeal on this issue. Thereafter, this issue is to be returned to the Board only if an adequate and timely substantive appeal is filed.

5. Review all evidence received since the last prior adjudications and readjudicate the Veteran's remaining claims on appeal. If any benefit sought on appeal remains denied, then issue an SSOC and provide the Veteran and his representative an appropriate period of time to respond. Thereafter, the case should be returned to the Board for further appellate consideration, if in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
T. MAINELLI
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs