Citation Nr: AXXXXXXXX
Decision Date: 07/14/21 Archive Date: 07/14/21

DOCKET NO. 210310-142731
DATE: July 14, 2021

ORDER

Entitlement to service connection for prostate cancer is denied. 

Entitlement to service connection for erectile dysfunction as secondary to the prostate cancer also is denied.

FINDINGS OF FACT

1. The preponderance of the evidence is against finding that the Veteran's prostate cancer onset during his service, manifested to a compensable degree within the initial year following his separation from service, or is otherwise related or attributable to his service including to exposure to contaminated water at Camp Lejeune.

2. Even if his erectile dysfunction is a complication of his prostate cancer, it, too, is not attributable to his service since the prostate cancer has not been shown to be etiologically linked to his service, and the erectile dysfunction also is not otherwise shown to be related or attributable to his service.

 

CONCLUSIONS OF LAW

1. The criteria are not met for entitlement to service connection for prostate cancer. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. The criteria also are not met for entitlement to service connection for erectile dysfunction, including as secondary to the prostate cancer. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served honorably in the United States Marine Corps from July 1959 to January 1960.

This appeal to the Board of Veterans' Appeals (Board) is from a February 2021 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO).

On his March 2021 VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement (NOD)), the Veteran elected the "Direct Review" option. Therefore, in deciding this appeal, the Board may only consider the evidence of record at the time of the RO, i.e., Agency of Original Jurisdiction (AOJ) decision that he has appealed. See 38 C.F.R. § 20.301. 

The Board has advanced this appeal on the docket (AOD) pursuant to 38 U.S.C. § 7107(a)(2) and 38 C.F.R. § 20.800(c).

In the February 2021 rating decision that is the subject of this appeal, the RO (AOJ) made favorable findings in terms of conceding the Veteran served at Camp Lejeune from July 1959 to January 1960, that he resultantly was exposed to contaminated water while there, and that he since has received a diagnosis of prostate cancer in 1995. The Board is bound by these favorable findings. See 38 C.F.R. § 3.104(c).

Notably, however, there still must be attribution of his prostate cancer to his conceded exposure to contaminated water at Camp Lejeune, and, as will be discussed, it is in this equally critical respect that the evidence is against his claim, not instead supportive of it or even in relative balance to in turn warranting invoking the benefit-of-the-doubt doctrine. See Watson v. Brown, 4 Vet. App. 309, 314(1993) ("A determination of service connection requires a finding of the existence of a current disability and a determination of a relationship between that disability and an injury or a disease incurred in service.").

1. Entitlement to service connection for prostate cancer is denied. 

Service connection is granted if the evidence demonstrates that a current disability resulted from an injury sustained or a disease contracted in the line of duty during active military service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303(a). In general, service connection requires probative evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or an injury; and (3) a causal relationship ("nexus") between the present disability and the disease or injury incurred or aggravated during service. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Fourteen diseases have been placed into the category of limited/suggestive evidence of an association with the contaminating water-supply system at Camp Lejeune. These fourteen diseases are: esophageal cancer, lung cancer, breast cancer, bladder cancer, kidney cancer, adult leukemia, multiple myeloma, myelodysplastic syndromes, renal toxicity, hepatic steatosis, female infertility, miscarriage with exposure during pregnancy, scleroderma, and neurobehavioral effects.

However, that aside, malignant (i.e., cancerous) tumors, even if not of the specific type just mentioned, also may be presumed to have been incurred in service if they manifested to a compensable degree within a year of the Veteran's separation from service, even if not shown in service, although this presumption is rebuttable by affirmative evidence to the contrary. See 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. 

 

VA has conceded that Veterans, or Reservists, who had no less than 30 days of service at Camp Lejeune during the period beginning on August 1, 1953, and ending on December 31, 1987, shall be presumed to have been exposed during such service to the contaminants in the water supply. 38 C.F.R. § 3.307(a)(7)(iii).

Additionally, where symptoms are capable of lay observation, a lay witness is competent to testify to a lack of symptoms prior to service, continuity of symptoms after in-service injury or disease, and receipt of medical treatment for such symptoms. Charles v. Principi, 16 Vet. App. 370, 374 (2002).

When considering whether lay evidence is competent, the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011). Further, while the Veteran is competent in certain situations to provide a diagnosis of a simple condition such as a headache, varicose veins, or tinnitus, the Veteran is not competent to provide evidence as to more complex medical questions such as, notably, the etiology of cancers. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, meaning about evenly balanced for versus against the claim, with the Veteran prevailing in either event, or whether instead a preponderance of the evidence is against the claim, in which case the claim conversely is denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 

Prostate cancer is not listed among the diseases associated with exposure to the contaminated water supply at Camp Lejeune. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. Thus, presumptive service connection is not warranted for the Veteran's prostate cancer. However, service connection still may be established in this circumstance alternatively under 38 C.F.R. § 3.303(d) by showing this disease is directly traceable to his service, so directly related to his presumed exposure to contaminated water at Camp Lejeune. See Combee v. Brown, 34 F.3d 1039, 1043-44 (Fed. Cir. 1994). 

The Veteran's service treatment records (STRs) do not reflect any relevant complaints, treatment, or diagnosis of prostate cancer during his service or even within a year of his discharge. But, again, that is not necessarily determinative of whether his prostate cancer, even though not until more recently diagnosed, is directly attributable to his service. However, while, as already mentioned, he has a current diagnosis of prostate cancer, and it is presumed he was exposed to contaminated water at Camp Lejeune, the preponderance of the evidence weighs against finding that his prostate cancer began during his service, within a year of his discharge, or is otherwise related or attributable to his service, including especially to his presumed exposure to contaminated water at Camp Lejeune.

There is no etiological opinion of record regarding the origins of the Veteran's prostate cancer, so including in terms of providing the required correlation to his presumed exposure to contaminated water at Camp Lejeune, nor does the record on appeal contain any treatment records or other competent evidence even suggesting that his prostate cancer is a result or consequence of that unfortunate exposure. Since a layman, he is not competent to make this determination himself. See 38 C.F.R. § 3.159(a)(1) and (2).

 

This determination is medically complex, not instead merely simple, as it requires knowledge of pathology. Therefore, it is beyond the Veteran's lay competence. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007).

In response to claims of entitlement to service connection for a given disability, VA must provide a medical examination and medical opinion when there is: (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran's service or a service-connected disability, but (4) insufficient competent medical evidence on file for VA to make a decision on the claim. See McLendon v. Nicholson, 20 Vet. App. 79, 81-82 (2006).

Regarding the third factor, the higher U. S. Court of Appeals for Veterans Claims (Veterans Court/CAVC) has stated that this element establishes a low threshold and requires only that the evidence "indicates" that there "may" be a nexus between the current disability or symptoms and the Veteran's service. The types of evidence that "indicate" that a current disability "may be associated" with military service include, but are not limited to, medical evidence suggesting a nexus but that is too equivocal or lacking in specificity to support a decision on the merits or credible evidence of continuity of symptomatology such as pain or other symptoms capable of lay observation. McLendon, 20 Vet. App. 79.

The even higher U. S. Court of Appeals for the Federal Circuit (Federal Circuit Court), however, also has addressed the appropriate standard to be applied in determining whether an examination and opinion are warranted. In two precedent cases, Waters v. Shinseki, 601 F.3d 1274, 1278 (Fed. Cir. 2010), and Colantonio v. Shinseki, 606 F.3d 1378 (Fed. Cir. 2010), the Federal Circuit Court held that, while there must be "medically competent" evidence of a current disability, "medically competent" evidence is not required to indicate that the current disability may be associated with service. Colantonio, 606 F.3d at 1382; Waters, 601 F.3d at 1277. On the other hand, however, a mere conclusory generalized lay statement suggesting a nexus between a current disability and service (as in this case here) would not suffice to meet the standards, as this would, contrary to the intent of Congress, result in medical examinations being "routinely and virtually automatically" provided to all Veterans claiming entitlement to service connection, so in contravention of the craftily tailored requirements for requesting an examination and opinion and, instead, simply as a matter of course. Waters, 601 F.3d at 1278-1279.

Thus, there is no pre-decisional, duty-to-assist error that would now necessitate providing the Veteran an examination for a medical nexus opinion concerning the cause of his prostate cancer especially in relation to his military service and accepted exposure to contaminated water at Camp Lejeune.

In sum, although the Veteran has established that he has prostate cancer, the preponderance of the evidence weighs against finding that it is attributable to his military service, including particularly to his presumed exposure to contaminated water at Camp Lejeune. Since the preponderance of the evidence is against his claim, the benefit-of-the-doubt rule is not applicable. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). His claim consequently is denied.

2. Entitlement to service connection for erectile dysfunction (ED) as secondary to the prostate cancer also is denied.

Because service connection for the Veteran's prostate cancer cannot be established, his derivative claim of entitlement to service connection for ED also necessarily must fail since the premise of this other claim is that his ED is secondary to his prostate cancer meaning caused or aggravated by it. 38 C.F.R. § 3.310(a) and (b); see also Allen v. Brown, 7 Vet. App. 439, 448 (1995).

 

But even if there is the required correlation between his prostate cancer and ED, because his prostate cancer has not been determined to be attributable to his service (i.e., a service-connected disability), he cannot in turn have the prostate cancer serve as the pathway for also secondarily linking his ED to his service. Thus, this other claim also must be denied, also because it has not otherwise been linked to his service. 

 

KEITH W. ALLEN

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board C. B. Kucera

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.