﻿Citation Nr: AXXXXXXXX
Decision Date: 03/19/19 Archive Date: 03/19/19

DOCKET NO. 180805-164
DATE: March 19, 2019

ORDER

Service connection for 12-inch scar on chest, keloid, is denied. 

Service connection for athlete's foot is denied. 

Service connection for arthritis of the left hand and fingers is denied. 

Service connection for arthritis of the left leg is denied.

Service connection for arthritis of the right hand and fingers is denied. 

Service connection for arthritis of the right leg is denied. 

Service connection for arthritis of the right shoulder is denied.

Service connection for dental disorder is denied.

Service connection for dry eye syndrome, residuals of bilateral LASIK surgery, is denied.

Service connection for left hand nerve disorder is denied.

Service connection for right hand nerve disorder is denied.

Service connection for sleep apnea is denied.

Readjudication of the claim of service connection for coronary artery disease status post bypass surgery is warranted. 

Service connection for coronary artery disease status post bypass surgery is denied. 

Readjudication of the claim of service connection for depression is warranted. 

Service connection for depression is denied. 

Readjudication of the claim of service connection for enlarged prostate/benign prostate hypertrophy (BPH) is warranted. 

Service connection for enlarged prostate/benign prostate hypertrophy (BPH) is denied. 

Readjudication of the claim of service connection for frostbite (now claimed as cold weather feet injury) is warranted. 

Service connection for frostbite (now claimed as cold weather feet injury) is denied. 

Readjudication of the claim of service connection for high cholesterol (now claimed as cholesterol condition) is warranted. 

Service connection for high cholesterol (now claimed as cholesterol condition) is denied. 

Readjudication of the claim of service connection for PTSD is warranted. 

Service connection for PTSD is denied. 

FINDINGS OF FACT

1. The evidence does not show a 12-inch scar on chest, keloid, that is related to service, nor was one caused or aggravated beyond natural progression by a service connected disability.

2. The weight of the evidence is against finding that the Veteran has an athlete’s foot disorder that is related to service.

3. The weight of the evidence is against a finding that Veteran has arthritis of the left hand and fingers that is related to service.

4. The weight of the evidence is against a finding that Veteran has arthritis of the left leg that is related to service.

5. The weight of the evidence is against a finding that the Veteran has arthritis of the right hand and fingers that is related to service.

6. The weight of the evidence is against a finding that the Veteran has arthritis of the right leg that is related to service.

7. The weight of the evidence is against a finding that the Veteran has arthritis of the right shoulder that is related to service.

8. The weight of the evidence is against a finding that the Veteran has a dental disorder that is related to service.

9. The weight of the evidence is against a finding that the Veteran has dry eye syndrome that is related to service.

10. The weight of the evidence is against a finding that the Veteran has a left-hand nerve disorder that is related to service.

11. The weight of the evidence is against a finding that the Veteran has a left-hand nerve disorder that is related to service.

12. The weight of the evidence is against a finding that the Veteran has sleep apnea that is related to service.

13. New evidence received after the March 2010 denial is relevant to the issue of entitlement to service connection for coronary artery disease (CAD).

14. The weight of the evidence is against a finding that the Veteran has CAD that is related to service. 

15. New evidence received after the March 2010 denial is relevant to the issue of entitlement to service connection for depression.

16. The weight of the evidence is against a finding that the Veteran has depression that is related to service.

17. New evidence received after the March 2010 denial is relevant to the issue of entitlement to service connection for benign prostate hypertrophy (BPH).

18. The weight of the evidence is against a finding that the Veteran has BPH that is related to service.

19. New evidence received after the May 1995 denial is relevant to the issue of entitlement to service connection for frostbite.

20. The weight of the evidence is against a finding that the Veteran has frostbite that is related to service.

21. New evidence received after the March 2010 denial is relevant to the issue of entitlement to service connection for cholesterol.

22. High cholesterol is not a disability for VA compensation purposes and the Veteran does not otherwise have a disability manifested by high cholesterol.

23. New evidence received after the June 2010 denial is relevant to the issue of entitlement to service connection for PTSD.

24. The weight of the evidence is against a finding that the Veteran has PTSD that is related to service.

CONCLUSIONS OF LAW

1. The criteria for service connection for 12-inch scar on chest, keloid, have not been met. 38 U.S.C. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.303, 3.310.

2. The criteria for service connection for Athlete's foot have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303.

3. The criteria for service connection for arthritis of the left hand and fingers have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

4. The criteria for service connection for arthritis of the left leg have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

5. The criteria for service connection for arthritis of the right hand and fingers have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

6. The criteria for service connection for arthritis of the right leg have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

7. The criteria for service connection for arthritis of the right shoulder have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

8. The criteria for service connection for dental disorder have not been met. 38 U.S.C. §§ 1110; 38 C.F.R. §§ 3.102, 3.303, 3.381, 4.150.

9. The criteria for service connection for dry eye syndrome, residuals of bilateral LASIK surgery have not been met 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303.

10. The criteria for service connection for left hand nerve disorder have not been met 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

11. The criteria for service connection for right hand nerve disorder have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

12. The criteria for service connection for sleep apnea have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.159, 3.303, 3.304, 3.310.

13. The criteria for readjudicating the claim for service connection for CAD have been met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2018).

14. The criteria for service connection for CAD have not been met 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

15. The criteria for readjudicating the claim for service connection for depression have been met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2018).

16. The criteria for service connection for depression have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

17. The criteria for readjudicating the claim for service connection for enlarged prostate or benign prostate hypertrophy (BPH) are met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2018).

18. The criteria for service connection for enlarged prostate or benign prostate hypertrophy (BPH) have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

19. The criteria for readjudicating the claim for service connection for frostbite (now claimed as cold weather feet injury) have been met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2018).

20. The criteria for service connection for frostbite (now claimed as cold weather feet injury) have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303.

21. The criteria for readjudicating the claim of service connection for high cholesterol (now claimed as cholesterol condition) have been met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2018).

22. The criteria for service connection for high cholesterol (now claimed as cholesterol condition) have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303.

23. The criteria for readjudicating the claim of service connection for PTSD have been met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2018).

24. The criteria for service connection for PTSD have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from February 1976 to August 1994 with a prior period of active duty for training from December 1974 to April 1975. 

These matters come to the Board of Veterans' Appeals (Board) on appeal from an October 2017 decision issued by the Department of Veterans Affairs (VA) regional office (RO) which denied service connection for the enumerated issues plus 3 additional issues of service connection for post-traumatic stress headaches; left shoulder arthritis and 6-inch scar, residuals of hernia surgery. He filed a notice of disagreement with this rating in December 2017.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA's decision on their claim to seek review. The Veteran chose to participate in VA's test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form on February 6, 2018. Accordingly, the June 2018 RAMP higher level rating decision considered the evidence of record as of the date VA received the RAMP election form. With the exception of the issues of entitlement to service connection for post-traumatic stress headaches; left shoulder arthritis and 6-inch scar, and residuals of hernia surgery, which were not included in his NOD of the June 2018 RAMP decision and thus not before the Board, the Veteran timely appealed the enumerated issues in this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

The new and material evidence issues regarding issues of CAD, depression, BPH frostbite, and high cholesterol have been recharacterized to reflect the new evidentiary standard under the AMA. Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109. In the August 2018 RAMP decision that considered these claims reopened, the AOJ implicitly determined that new and relevant evidence was received to warrant readjudicating the claims of service connection for CAD, depression, PTSD, BPH, frostbite, and high cholesterol. The Board is bound by this favorable finding. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07. As such, the Board need not adjudicate the reopening of the claims again and may proceed to the merits of the service connection claims.

The Board is cognizant that service connection for an eye disorder of myopia/astigmatism was denied in a May 1995 rating; however, the current eye disability appealed from the May 2017 rating and the June 2018 higher level appeal rating is a dry eye syndrome, which is a different disability than the previously adjudicated myopia/astigmatism. Thus, there is no need to consider new and relevant evidence regarding this issue. 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. Such a determination requires a finding of current disability that is related to an injury or disease in service. Watson v. Brown, 4 Vet. App. 309 (1993); see also Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Rabideau v. Derwinski, 2 Vet. App. 141, 143 (1992). Service connection may be granted for any disease diagnosed after discharge from service when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d).

Service connection may be established under the provisions of 38 C.F.R. § 3.303 (b) when the evidence, regardless of its date, shows that a veteran had a chronic condition in service or during the applicable presumptive period. Certain chronic diseases, to include neurological disorders and psychosis, may be presumed to have been incurred or aggravated during service if they become disabling to a compensable degree within one year of separation from active duty. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. In addition, service connection solely on the basis of continuity of symptomatology can only be established for the chronic diseases specified at 38 C.F.R. § 3.309 (a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). With chronic disease shown as such in service (or within the presumptive period under § 3.307) so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. Continuity of symptomatology is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303 (b).

Service connection may be also established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310 (a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. 38 C.F.R. § 3.310 (a) (2017); Allen v. Brown, 7 Vet. App. 439 (1995).

In Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), the United States Court of Appeals for Veterans Claims (Court) stated that “a veteran need only demonstrate that there is an ‘approximate balance of positive and negative evidence’ in order to prevail.” To deny a claim on its merits, the preponderance of the evidence must be against the claim. See Alemany v. Brown, 9 Vet. App. 518, 519 (1996) (citing Gilbert, 1 Vet. App. at 54).

1. Service connection for 12-inch scar on chest, keloid is denied.

The Veteran contends that service connection is warranted for a 12-inch keloid scar on his chest. In his August 2017 claim, he described a 12-inch scar from 3 bypass surgeries, followed by a description of a 12-inch keloid scar, with discoloration, that was tender. He later described a 12-inch keloid scar on his chest from an in-service disorder in his December 2017 NOD with the October 2017 rating. No further clarification of this scar was made in the August 2018 NOD with the June 2018 higher level rating or any other correspondences, other than to describe it as unstable and discolored. Service treatment records are silent for any findings or complaints of keloid or other skin problems including on examinations and reports of medical history on entrance, periodical evaluations or on separation in February 1994. See 88 pg. STRs received 9/8/17 at pg. 1-3, 19-21, 23, 25, 27-49. Post-service records show no evidence of a keloid scar or any type of scar prior to August 2008 when he underwent coronary bypass graft surgery for severe 3 vessel CAD with surgical records describing a sternometry and opening up the pleural cavity. Thereafter, the records were noted to be silent regarding his scarring, except for a September 2017 VA primary care note showing findings of a scar from his CABG, which resulted in no deformity. See 104 pg. CAPRI received on 10/2/17 at pg. 2. 

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, there is no credible medical or lay evidence showing a keloid scar disability of in-service onset or otherwise related to any in-service incident. Regarding the surgical scar from the CABG, the Veteran’s CAD that resulted in the surgery causing the scar is not service-connected and in fact service connection is denied for that disorder in this decision, as will be discussed below. Thus, the Board finds that the claim of service connection for a 12-inch keloid scar is not warranted on any basis including as secondary to CAD. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

2. Service connection for Athlete's foot is denied.

The Veteran contends that service connection is warranted for athlete’s foot. However, he has not provided any lay evidence addressing the etiology of this claimed disorder, including his August 2017 claim, his December 2017 NOD with the October 2017 rating, the August 2018 NOD with the June 2018 higher level rating or any other correspondence. Service treatment records are silent for any findings or complaints of athlete’s foot or other skin problems of the feet including on examinations and reports of medical history on entrance; examination of the feet following a cold injury in February 1985; periodical evaluations or on separation in February 1994. See 88 pg. STRs received 9/8/17 at pg. 1-3, 19-21, 23, 25, 27-49, see 62 pg. STR received 6/1/85 at pg. 37. Post-service records are noted to show a diagnosis of mild tinea pedis diagnosed in a March 2011 podiatry record. See 4 pg. CAPRI received 4/14/11 at pg. 2; see also 104 pg. CAPRI received 10/2/17 at pg. 38. However, this record showing tinea pedis does not provide any evidence as to their etiology. The Veteran has provided no lay evidence describing the etiology of athlete’s foot/tinea pedis, although he did describe symptoms of dry, itchy scaly rashes on his bilateral feet in December 2017 and August 2018 NODs. Moreover, neither correspondence to VA or statements to treating providers indicates continuity of symptomatology dating back to service.

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, the Board notes there is no credible medical or lay evidence showing tinea pedis to be of in-service onset or otherwise related to any in-service incident. Thus, the Board finds that the claim for service connection for tinea pedis must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

3. Service connection for arthritis, left hand and fingers is denied.

The Veteran contends that service connection is warranted for arthritis of the left hand and fingers. However, he has not provided any lay evidence addressing the etiology of this claimed disorder including his August 2017 claim, his December 2017 NOD with the October 2017 rating, the August 2018 NOD with the June 2018 higher level rating or any other correspondences. Service treatment records disclose that in October 1979 the Veteran sustained a left-hand injury in which he had the left head 4th phalange pinched at the distal end when a banding machine slipped; he had been tightening a chain to secure equipment at the time. The left 4th phalange at distal end was very painful with pressure at distal end, contusion and edema present, and a possible fracture of the left 4th phalange at the distal end. This was splinted and he was told to return for followup. Other than this incident, service treatment records are silent for any findings or complaints of left-hand problems including on examinations and reports of medical history on entrance, periodical evaluations or on separation in February 1994. Post-service records are silent for any findings or complaints of left-hand problems for several years after service and arthritis is not shown to be manifested within the first post-service year.

Post-service records show that in August 2014 the Veteran was seen for complaints of 3rd digit swelling on the right hand for several months that was diagnosed as third digit swelling, ostearthritis vs. old trauma; no findings for the left hand were made. A few months later in October 2014, he was seen for bilateral hand pain and stiffness, again worse in the morning, with the problems beginning several months ago in June after moving, and no history of swelling except for a single episode of swelling in his right middle finger in August 2014. He attributed his hand problems to physical labor when moving. Following examination which was significant for only complaints of stiffness, he was assessed with bilateral hand stiffness in more than10 joints (hand DIPs and PIPs) times several months. The stiffness lasted a considerable amount of time, and he has also had an episode of swelling, as well. Complaints were deemed concerning enough to warrant testing for autoimmune diseases, most specifically for RA. Later he was seen in December 2015 for complaints of pain in multiple joints, including his hands. Later in July 2017 he was seen for pain in L thumb and middle 2 fingers after working under his house with a past history of being diagnosed with carpal tunnel syndrome (CTS). None of the records addressing his left-hand complaints are noted to show evidence of a nexus between these complaints and any incident in service. Moreover, neither correspondence to VA or statements to treating providers indicates continuity of symptomatology dating back to service.

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, the Board notes there is no credible medical or lay evidence showing a chronic arthritis disability affecting the left hand and fingers within the first post-service year or continuous symptoms since service or otherwise related to any inservice incident including the October 1979 hand injury, which is shown to have been acute and transitory and resolved without residuals. 

Thus, the Board finds that the claim for service connection for arthritis of the left hand and fingers must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

4. Service connection for arthritis, left leg is denied.

The Veteran contends that service connection is warranted for arthritis of the left leg. However, he has not provided any lay evidence addressing the etiology of this claimed disorder including his August 2017 claim, his December 2017 NOD with the October 2017 rating, the August 2018 NOD with the June 2018 higher level rating or any other correspondences. Service treatment records are silent for any findings or complaints of left leg or knee problems, including on examinations and reports of medical history on entrance, periodical evaluations or on separation in February 1994. He is noted to have been seen for a complaint of knee pain, limited to the right knee in September 1986 one day after running, with no significant findings regarding the left knee. .

Post-service records are silent for any findings or complaints of chronic left leg or knee problems, including arthritis. An October 2014 VA record investigating complaints of hand stiffness and pain noted that he had no issue with his lower extremities with examination findings of no pain, tenderness, swelling in his elbows, knees, ankles bilaterally. 

The Veteran has likewise provided no lay evidence describing the etiology of the left leg complaints described in the August 2018 NOD as including pain and limited motion. Moreover, neither correspondence to VA or statements to treating providers indicates continuity of symptomatology dating back to service.

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, the Board notes there is no credible medical or lay evidence showing a chronic arthritis disability affecting the left lower extremity within the first post-service year or continuous symptoms since service or otherwise related to any inservice incident. Service connection is only warranted where the evidence demonstrates a diagnosed disability. See Brammer, 3 Vet. App. at 225. 

Thus, the Board finds that the claim for service connection for left leg arthritis must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

5. Service connection for arthritis, right hand and fingers is denied.

The Veteran contends that service connection is warranted for arthritis of the right hand and fingers. However, he has not provided any lay evidence addressing the etiology of this claimed disorder including his August 2017 claim, his December 2017 NOD with the October 2017 rating, the August 2018 NOD with the June 2018 higher level rating or any other correspondences. 

Service treatment records are silent for any findings or complaints of right hand problems, including on examinations and reports of medical history on entrance, periodical evaluations or on separation in February 1994. Post-service records are silent for any findings or complaints of right-hand problems for several years after service and arthritis is not shown to be manifested within the first post service year. Post service records are silent for any findings or complaints of right hand problems for several years after service and arthritis is not shown to be manifested within the first post-service year.

Post-service records show that in August 2014 the Veteran was seen for complaints of 3rd digit swelling on the right hand for several months. He first noticed this in June when he moved residences. He complained of morning stiffness and inability to make a fist in the right hand and physical examination of the third digit of right hand disclosed MCP and DIP swelling, mild in nature. He was diagnosed with third digit swelling, ostearthritis vs. old trauma. A few months later in October 2014, he was seen for bilateral hand pain and stiffness, again worse in the morning, with the problems beginning several months ago in June after moving, and no history of swelling except for a single episode of swelling in his right middle finger in August 2014. He attributed his hand problems to physical labor when moving. Following examination which was significant for only complaints of stiffness, he was assessed with bilateral hand stiffness in more than10 joints (hand DIPs and PIPs) times several months. The stiffness lasted a considerable amount of time, and he has also had an episode of swelling, as well. Complaints were deemed concerning enough to warrant testing for autoimmune diseases, most specifically for RA. Later he was seen in December 2015 for complaints of pain in multiple joints including his hands. 

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, the Board notes there is no credible medical or lay evidence showing a chronic arthritis disability affecting the right hand and fingers within the first post-service year or continuous symptoms since service or otherwise related to any inservice incident. It is noted that the October 1979 STR documenting a hand injury was limited to the left hand only, with no significant findings for the right hand. Moreover, neither correspondence to VA or statements to treating providers indicates continuity of symptomatology dating back to service.

Thus, the Board finds that the claim for service connection for arthritis of the right hand and fingers must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

6. Service connection for arthritis, right leg is denied.

The Veteran contends that service connection is warranted for arthritis of the right leg. However, he has not provided any lay evidence addressing the etiology of this claimed disorder including his August 2017 claim, his December 2017 NOD with the October 2017 rating, the August 2018 NOD with the June 2018 higher level rating or any other correspondences. Service treatment records do show complaints of right knee pain for one day in September 1986 with onset while running, but no injury or swelling. Activities prior to onset including the 8-mile run and painting. He had no past medical history of knee problems and no pain while walking. His pain was increased during stair climbing. Physical examination included tender iliotibial band (ITB) distally and crepitus with positive Obers. He had no laxity, grind, effusion or joint tenderness. He was assessed with iliotibial band friction syndrome (ITBFS) and was prescribed stretching exercises and Motrin. Later in November 1979 he was treated for an injury to the right ankle 4 hours earlier, with full range of motion of the ankle/foot without increased pain, edema or ecchymosis. The diagnosis was contusion. X-rays three days later in November 1979 for a sprain of the right foot diagnosed a fracture of the talus, non-displaced. However, there are no subsequent problems of the right lower extremity shown in later STRs and examinations, including on separation in February 1994. 

The Veteran has likewise provided no lay evidence describing the etiology of the right leg complaints described in the December 2017 NOD as including pain and limited motion. 

Post-service records are silent for any findings or complaints of chronic right leg or knee problems, including arthritis. An October 2014 VA record investigating complaints of hand stiffness and pain noted that he had no issue with his lower extremities with examination findings of no pain, tenderness, swelling in his elbows, knees, ankles bilaterally. Moreover, neither correspondence to VA or statements to treating providers indicates continuity of symptomatology dating back to service.

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, the Board notes there is no credible medical or lay evidence showing a chronic arthritis disability affecting the right lower extremity within the first post-service year or continuous symptoms since service or otherwise related to any inservice incident. Service connection is only warranted where the evidence demonstrates a diagnosed disability. See Brammer, 3 Vet. App. at 225. 

Thus, the Board finds that the claim for service connection for right leg arthritis must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

7. Service connection for arthritis, right shoulder is denied.

The Veteran contends that service connection is warranted for a right shoulder disorder claimed as arthritis. However, he has not provided any lay evidence addressing the etiology of this claimed disorder including his August 2017 claim, his December 2017 NOD with the October 2017 rating, the August 2018 NOD with the June 2018 higher level rating or any other correspondences. 

Service treatment records show that the Veteran was seen on multiple occasions in May 1990 for right shoulder pain beginning on May 8, when he reported a history of right shoulder pain relieved with Naprosyn. On May 9 he reported right shoulder pain and decreased range of motion times 2 days. There was no history of trauma, no increased activity and he denied flu or cold symptoms. He was diagnosed with myofascial type pain and was treated with heat, rest. He was later seen on May 10, when he reported right shoulder pain and upper back pain when he turned his head from side to side, and was treated with Noragin Forte. On May 14, 1990 he was reevaluated for right shoulder pain that started 7 days ago pain, burning and sharp in nature. He denied trauma. Examination disclosed the right shoulder to be with deformity defect, tenderness and loss of motion. X-rays R shoulder were negative for dislocation. Later, May 23, 1990, he had right arm burning and bicep pain for 3 weeks and was unsure how he hurt his arm and noted a red spot on the inner arm. S An undated right shoulder X-ray for history of right shoulder pain for 7 days showed no bone or joint abnormality. Thereafter, the STRS are negative for right shoulder complaints including on separation in February 1994. 

Post-service records are negative for right shoulder complaints until October 1999, when the Veteran was seen for a stiff neck and right shoulder pain since 1999 when he slipped on a wax floor at work. MRI showed a herniated nucleus pulposus (HNP) at C6-7 and carpal tunnel syndrome (CTS) on the left. He was noted to have undergone cervical diskectomy. Another October 1999 record noted a history of stiff neck and right shoulder pain with tingling in the right arm. MRI diagnosed HNP and EMG diagnosed left CTS. 

Right shoulder complaints are not shown again until a single episode of right shoulder pain was reported in January 2008, with pain that began a few weeks prior. He had been exercising and lifting weights and three days ago started doing sit-ups and had worsening pain associated with some numbness of the right fingers, relieved with Tylenol. The pain and numbness subsided. He was assessed with right shoulder pain and history of herniated disc surgery, which seemed to be cervical from what he said. 

Thereafter, the records continuing through 2017 are noted to be silent for any complaints or findings of a right shoulder disorder. None of the records addressing any right shoulder complaints are noted to show evidence of a nexus between these complaints and any incident in service. 

The Veteran has likewise provided no lay evidence describing the etiology of the right shoulder complaints described in the December 2017 NOD as including pain and limited motion. Moreover, neither correspondence to VA or statements to treating providers indicates continuity of symptomatology dating back to service.

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, the Board notes there is no credible medical or lay evidence showing a chronic arthritis disability affecting the right shoulder within the first post-service year or continuous symptoms since service or otherwise related to any inservice incident, to include the acute and transitory episodes of right shoulder pain documented in-service in 1990. While there was an episode of right shoulder pain in October 1999, this was reportedly related to a cervical spine disorder for which service connection is not currently in effect. Thereafter, there is one isolated subsequent episode of right shoulder pain treated in 2008 and again believed to be associated with a cervical spine disorder. Service connection is only warranted where the evidence demonstrates a diagnosed disability. See Brammer, 3 Vet. App. at 225. 

Thus, the Board finds that the claim for service connection for right shoulder arthritis must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

8. Service connection for dental disorder is denied.

The Veteran contends that service connection is warranted for a dental disorder described as incomplete dental treatment in his August 2017 claim and as defective dental damage in his August 2018 NOD. In his December 2017 NOD he broadly described that his mouth, teeth, and gums were affected. 

Under the current legal authority, compensation is only available for certain limited types of dental and oral conditions, such as impairment of the mandible, loss of a portion of the ramus, and loss of a portion of the maxilla. See 38 C.F.R. § 4.150. Treatable carious teeth, replaceable missing teeth, dental or alveolar abscesses, and periodontal disease are not disabilities for compensation purposes, but may be considered service-connected solely for the purpose of establishing eligibility for outpatient dental treatment. 38 U.S.C. § 1712; 38 C.F.R. §§ 3.381, 4.150.

The Board acknowledges that the Veteran lost several teeth and has required several trips to the dentist for extraction and treatments including periodontal scaling, treatment for gingivitis, and treatment for caries. The Board also acknowledges that he was fitted with a temporary bridge for missing teeth in May 1986 for teeth numbered 29-31, while in September 1986 he was seen for a broken bridge that was repaired with acrylic and cement. Later in December 1991 he was seen for complaints of soreness in his back teeth since eating candy. He was diagnosed with inflamed DDLs secondary to chewy candy. He was advised to return for further treatment if the symptoms did not resolve. There is no subsequent treatment for this problem, so it is presumed to have resolved. None of these factors are relevant in light of the very limited circumstances under which a claim of service connection for a dental disability for compensation purposes may be granted. 

The statutory and regulatory are very clear and very narrow where the issue of service connection for dental disabilities is concerned. Unlike other disabilities, where the presence of a condition in service is affirmative evidence with respect to a service connection claim, dental disabilities are governed by specific requirements and evidence of a dental problem in service is not relevant to the present claim. Rather, what must be shown is either dental trauma in service resulting in loss of teeth due to a loss of substance of the maxilla or mandible (bone loss); or a disease incurred in service that resulted in a loss of substance of the maxilla or mandible (bone loss) with resulting loss of teeth. In this instance, although the Veteran arguably had minor dental trauma from chewy candy, and missing teeth requiring a bridge, he is not shown to have a loss of substance of the maxilla or mandible. As a result, regardless of whether he had dental problems in service that are the same as those at the present time, or continuous dental problems since service, the criteria for service connection for a dental disability for compensation have not been met. 38 U.S.C. § 1712; 38 C.F.R. §§ 3.381, 4.150. 

9. Service connection for dry eye syndrome, residuals of bilateral LASIK surgery is denied.

The Veteran contends that service connection is warranted for dry eye syndrome as a result of LASIK surgery. Service treatment records are silent for any findings or complaints of dry eye or of Lasik surgery taking place in service, including on examinations and reports of medical history on entrance, periodical evaluations or on separation in February 1994. The service treatment records and examinations do show the Veteran to have refractive error for which per a May 1995 rating, service connection for myopia/astigmatism was denied as a constitutional and developmental abnormality for which compensation is not payable. See 38 C.F.R. §§ 3.303 (c), 4.9. Aside from the refractive error, he was also treated in October 1992 for blunt trauma to the left eye while playing basketball. Findings included superficial laceration/abrasion left upper eyelid with soft tissue swelling, with a diagnosis of contusion left eye. 

Post-service records are silent for any findings or complaints of eye problems of dry eye or complications of Lasik surgery. In January 2001 he was seen in an eye clinic for problems seeing up close. He was diagnosed with refractive error in both eyes. His ocular health was normal. See 108 pg. CAPRI Received 10/2/17 at pg. 103. 

More recent records disclose treatment for glaucoma, with follow-ups in January 2016 for glaucoma, with a history of Lasik surgery in 2006 noted. His past ocular history included open angle glaucoma, glaucoma suspect and cataract, with diagnosis of the cataract in 2013. Following examination, he was diagnosed with primary open angle glaucoma (POAG), mild stage. The same history and overall findings and diagnosis was made on follow-up for glaucoma in August 2016 and in March 2017. See 38 pg., Medical Recs Non Govt received 8/28/17 at pg. 10, 16, 21. None of the records suggested any relationship between any eye disorder noted and service, or to his Lasik surgery. These records also were silent for any evidence of the claimed disorder of dry eye syndrome. 

The Veteran has likewise provided no lay evidence describing his symptoms or etiology of dry eye or provided no further details about the Lasik surgery, including in his August 2017 claim, his December 2017 NOD with the October 2017 rating, the August 2018 NOD with the June 2018 higher level rating or any other correspondences. Moreover, neither correspondence to VA or statements to treating providers indicates continuity of symptomatology dating back to service.

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, the Board notes there is no credible medical or lay evidence showing a chronic dry eye disability with continuous symptoms since service or otherwise related to any inservice incident including the in-service basketball injury in 1992. Indeed, the file contains no findings of dry eye syndrome or other complications from Lasik surgery. Service connection is only warranted where the evidence demonstrates a diagnosed disability. See Brammer, 3 Vet. App. at 225. 

Thus, the Board finds that the claim for service connection for dry eye syndrome must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

10. Service connection for left hand nerve disorder is denied.

The Veteran contends that service connection is warranted for a nerve disorder of the left hand. However, he has not provided any lay evidence addressing the etiology of this claimed disorder, including his August 2017 claim, his December 2017 NOD with the October 2017 rating, the August 2018 NOD. Service treatment records are silent for any findings or complaints of neurological problems with his left hand including on examinations and reports of medical history on entrance, periodical evaluations or on separation in February 1994. However, in October 1979 he sustained a left-hand injury in which he had the left head 4th phalange pinched at the distal end when the banding machine slipped while he was tightening a chain to secure equipment. Findings of the left 4th phalange at distal end, was very painful with pressure at distal end, contusion and edema present, and a possible fracture of the left 4th phalange at the distal end. This was splinted, and he was told to return for followup. . This record was silent for any nerve problems and none of the other STRs documented neurological issues with the left hand.

Post-service records are silent for any findings or complaints of neurological problems of the left hand within a year of discharge from service. 

Thereafter, clinical records are negative for left hand neurological complaints until October 1999, when the Veteran was noted to have a carpal tunnel syndrome (CTS) on the left in records addressing treatment for cervical symptoms associated with a HNP at C6-7 and carpal tunnel syndrome (CTS) on the left. An EMG diagnosed left CTS. 

Subsequent treatment records are n silent for significant findings regarding the nature and etiology of the left hand’s neurological complaints, although a history of CTS was noted in treatment records from July 2017 addressing complaints of some pain in the left thumb and middle 2 fingers after working under his house. At that time, a history of CTS was noted. None of the records addressing his left-hand neurological complaints are noted to show evidence of a nexus between this disease and any incident in service. 

The Veteran has likewise provided no lay evidence describing his symptoms or etiology of his claimed left-hand neurological issues. 

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, the Board notes there is no credible medical or lay evidence showing a chronic neurological disability of the left hand within the first post-service year or continuous symptoms since service or otherwise related to any inservice incident. Thus, the Board finds that the claim for service connection for a neurological disorder of the left hand must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

11. Service connection for right hand nerve disorder is denied.

The Veteran contends that service connection is warranted for a nerve disorder of the right hand. However, he has not provided any lay evidence addressing the etiology of this claimed disorder including his August 2017 claim, his December 2017 NOD with the October 2017 rating, the August 2018 NOD. Service treatment records are silent for any findings or complaints of neurological problems with his right hand, including on examinations and reports of medical history on entrance, periodical evaluations or on separation in February 1994. Post-service records are silent for any findings or complaints of neurological problems of the right hand within a year of discharge from service. 

Thereafter, clinical records are negative for right hand neurological complaints, including in October 1999 when he was noted to have carpal tunnel syndrome (CTS) on the left diagnosed by EMG. Likewise, July 2017 records noting a history of CTS addressed left hand issues, with no mention of right-hand neurological problems. 

The Veteran has likewise provided no lay evidence describing his symptoms or etiology of his claimed right-hand neurological issues. Moreover, neither correspondence to VA or statements to treating providers indicates continuity of symptomatology dating back to service.

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, the Board notes there is no credible medical or lay evidence showing a chronic neurological disability of the right hand within the first post-service year or continuous symptoms since service or otherwise related to any inservice incident. Service connection is only warranted where the evidence demonstrates a diagnosed disability. See Brammer, 3 Vet. App. at 225. 

Thus, the Board finds that the claim for service connection for a neurological disorder of the right hand must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

12. Service connection for sleep apnea is denied.

The Veteran contends that service connection is warranted for sleep apnea, which he claims is secondary to his PTSD, for which he is also alleging entitlement to service connection. Such contentions were made in his August 2017 claim, his December 2017 NOD with the October 2017 rating, the August 2018 NOD. Service treatment records are silent for any findings or complaints of sleep problems including on examinations and reports of medical history on entrance, periodical evaluations or on separation in February 1994. Post service records are also silent for any findings or complaints of sleep apnea. 

The Veteran has likewise provided no lay evidence describing his symptoms or etiology of his claimed sleep apnea beyond his alleging it as associated with PTSD. 

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, the Board notes there is no credible medical or lay evidence showing a current disability of sleep apnea, including as caused or aggravated by PTSD or otherwise related to any in-service incident. Service connection is only warranted where the evidence demonstrates a diagnosed disability. See Brammer, 3 Vet. App. at 225. 

Thus, the Board finds that the claim for service connection for sleep apnea must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

13. Service connection for coronary artery disease status post bypass surgery is denied.

The Veteran contends that service connection is warranted for CAD, alleging in his claim that it began in service. In a September 2009 statement, he described having worked and being stationed in toxic and polluted environments, having worked operating heavy equipment for over six years and working as a chemical specialist for over 12 years. He alleged exposure to chemicals and radiation from chemical and radiological equipment. In this statement he also described having several risk factors for heart disease, which he was diagnosed with in August 2008. He underwent a quadruple bypass heart surgery after being hospitalized for chest pain. He alleged that his heart operation could have been prevented through proper medical treatment. . His service treatment records confirm that he spent several years as both a heavy equipment operator and later as chemical specialist, including as a battalion noncommissioned officer (NCO) and instructor at the Chemical Biological division at Fort McClellan. 

Service treatment records are silent for any findings or complaints of cardiovascular problems including on examinations and reports of medical history on entrance, periodical evaluations or on separation in February 1994. Post service records disclose no evidence of a cardiovascular disorder being diagnosed within one year of discharge. 

Post-service records dated in 2004 show complaints of possible cardiac symptoms. In December 2004 the Veteran was seen for chest pain. He had been stressed at work the previous day and had weekly symptoms over the last few months of chest tightness, fatigue, palpitations, and numbness down the left arm lasting a couple of hours that improved with rest. The assessment was chest pain, suspected more stress induced, but will rule out other causes. Plans included starting him on Prozac. An October 2004 cardio consult stress test report was electronically negative, with no chest pain during exercise

In August 2008 the Veteran underwent a coronary artery bypass graft CABG surgery for severe 3 vessel CAD which had been shown on catheterization. He was noted to have a disproportionate degree of calcific disease palpable throughout the course of each artery. His treated physician strongly advised the Veteran’s wife that all risk factors including cholesterol be monitored very carefully. Followup records noted the 3 level CAD in his problem list/past medical history in records from October 2008, December 2008 and June 2009. See 37 pg. Medical Records Non-Government received 7/16/09 at pg. 1, 3, 7-8, 33, 35. See also 119 pg. Medical Treatment Records Government Facility received 7/16/09. Subsequent records noted the history of CAD including in October 2014, and as recently as September 2017. 

In January 2016 he was seen in routine follow up for complaints of vague chest pain. Stress test showed minimal hypokinesis of anterior wall with normal ejection fraction and no ischemia. Symptoms resolved after he gave up drinking beer. Follow-up records from July 2016 likewise show a history of CAD status post bypass in August 2008, with no further chest pain but with stress test from 1 year ago showing scar in distribution of RCA. Following examination, he was assessed with atherosclerotic heart disease of native coronary artery without angina pectoris, no chest pain or shortness of breath. By July 2017 he again denied chest pain, shortness of breath or other cardiac symptoms. He was no longer followed in cardiology. His past medical history was the same as July 2016. None of the records addressing his CAD are noted to show evidence of a nexus between this disease and any incident in service. As for the claimed exposure to chemicals, the Veteran’s September 2009 statement regarding this exposure was overly broad and failed to identify specific chemicals that were reportedly hazardous, and he later denied exposure to radiation in January 2010. Moreover, neither correspondence to VA or statements to treating providers indicates continuity of symptomatology dating back to service.

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, the Board notes there is no credible medical or lay evidence showing a chronic cardiovascular disability within the first post-service year or continuous symptoms since service or otherwise related to any inservice incident, including any possible exposure to hazardous chemicals while performing his duties. Thus, the Board finds that the claim for service connection for CAD must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

14. Service connection for depression is denied.

The Veteran contends that service connection is warranted for depression. He has alleged that this is secondary to a claimed PTSD in his December 2017 NOD. The PTSD issue has been adjudicated separately from the depression claim by the RO. The Board takes note of the decision in Clemons v. Shinseki, 23 Vet. App. 1, 6 (2009) wherein, the United States Court of Appeals for Veterans Claims (Court) held that a claim for service connection for PTSD was not limited to an adjudication of PTSD alone in light of other diagnoses of mental illness in the record. Given that the evidence shows findings of a depression diagnosis but no other psychiatric disability including PTSD, the Board it continues to be appropriate to adjudicate these matters separately. 

Service treatment records are silent for any findings or complaints of depression or any other psychiatric disorder, including on examinations and reports of medical history on entrance, periodical evaluations or on separation in February 1994. The Veteran underwent psychiatric evaluation in June 1987 with the presenting problem illegible, but the examination was limited to an anticipated one-time visit. His social history was unremarkable, and he denied drug or alcohol use. His mental status examination was within normal limits and no psychiatric diagnosis was given. Recommendation was cleared. Likewise, his service personnel records are noted to show generally favorable periodic evaluation reports and promotions, with no evidence of disciplinary actions or counseling records that could be construed as showing possible psychiatric manifestations 

In a July 2010 Statement in Support of Claim for Service Connection for PTSD Secondary to Personal Assault the Veteran alleged that from January 1, 1982 to July 31, 1985 he was subjected to verbal and even physical abuse by his supervisors at the time, indicated that his First Sergeant S. and Operations Sergeant M. worked together to mentally tear him down or “break” him. He was harassed for talking to officers for which he had to do to perform his duties. He indicated they would verbally harass him and threaten to punish him harshly for minor mistakes. He indicated that one of the officers staged the loss of a supply of Nitrate used for first aid purposes and threatened him with jail if the Nitrate wasn’t found. He also indicated that he retired before his 20th year of service due to the ongoing abuse. He did not elaborate about any physical abuse but stated that he later learned that Sergeant S. was kicked out of the service for slapping a soldier. 

The August 2017 Statement in Support of Claim for Service Connection for PTSD described an incident said to have taken place in June 1976 at Fort Devens, when the Veteran was stationed with the 642nd Engineer. He a near death experience when he nearly drowned during adventure training because he attempted swimming across a lake with fatigues and boots on. He indicated he had to be rescued by two soldiers and was traumatized for years until he finally learned how to swim. 

Post-service records disclose that in September 2004 the Veteran was treated for chest pain that was suspected to be stress induced and a trial of Prozac was started. No psychiatric diagnosis was made in this record. Later in March 2006 he was diagnosed with depression, with the record noting that Prozac helps deal with stress. By June 2006 he still carried a diagnosis of depression, but his mood was improved by exercising and weight loss and he had been off Prozac. Depression remained on the active problem list in records from September 2006 with a note indicating that he had restarted Prozac with improvement in symptoms. In March 2007, he was again off Prozac and reported no problem with his mood. In January 2008 he had a past medical history of depression, with a history of medications that he reported made him “antsy” and feel worse. 

In June 2010 the Veteran inquired about how to apply for service connected disability for psychological trauma due to an abusive superior officer that he had in his tour in Germany and was told by the medical provider to go to local disability office to file a claim. Thereafter, in a July 2010 mental health intake consult request he reported serving in the Army from 1976-1994 as a biological chemical specialist. He stated that while serving in Germany in 1982-1985 that he was harassed by two Sgts. He reported that they regularly yelled at him in formation and he felt like he was treated unfairly regarding receiving leave time. He also reported that while he was away for training that he was moved out of his room and had to move in with the “Privates” despite being an E-6. reported anger and bitterness associated with this incident and suggested that this stress has impacted his health over the years (h/o quad bypass). He also stated that he has had difficulty standing up for himself over the years, which he attributed to feeling helpless while he was being harassed in Germany. Despite this, he denied any current symptoms of anxiety or depression but noted increased stress in 2004 related to family stress. He stated that he took Prozac for one year, which helped. His history was negative for prior mental health treatment. He reported being prescribed Prozac in 2004 by a primary care physician which was helpful. A brief mental status examination revealed he was in no significant psychological distress at this time and his mood was euthymic with congruent affect. The Axis I diagnosis was no diagnosis and Axis II was deferred. He stated that he was doing well currently and not experiencing any depression or anxiety. He felt he was not in need of psychotropic medication at this time. Thus, although this record noted a history of treatment in service that the Veteran perceived as unfair or abusive towards him, there was no psychiatric disorder diagnosed. 

The Veteran continued to have a diagnosis/past medical history of depression noted in subsequent records through 2017, including as noted in June 2011, December 2012, and September 2017; however, depression screens were repeatedly negative in the records between 2011 and 2017. Regarding the records showing a diagnosis or history of depression, none of them are noted to show evidence of a nexus between this diagnosis and any incident in service. Further, the records during the pendency of this appeal are noted to show no evidence of active depression symptoms.

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, the Board notes there is no credible medical or lay evidence showing a chronic psychosis within the first post-service year or continuous depression symptoms since service or otherwise related to any inservice incident, including the aforementioned claimed in-service incidents. Thus, the Board finds that the claim for service connection for depression must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

15. Service connection for enlarged prostate is denied.

The Veteran contends that service connection is warranted for a prostate disorder claimed as enlarged prostate. In a September 2009 statement, he described having worked and being stationed in toxic and polluted environments, having worked operating heavy equipment for over six years and being a chemical specialist for over 12 years. He alleged exposure to chemicals and radiation from chemical and radiological equipment. He described having problems with urination while stationed at Fort McClellan and he alleged having been tested for prostate problems in Fort Gordon Hospital. His service treatment records confirm that he spent several years as both a heavy equipment operator and later as chemical specialist, including as a battalion noncommissioned officer (NCO) and instructor at the Chemical Biological division at Fort McClellan. 

In a January 2010 Radiation Risk Activity Worksheet, the Veteran denied exposure to radiation while in the service. 

Service treatment records are silent for any findings of prostate abnormalities, although the Veteran was seen for urinary problems on multiple occasions starting in June 1989 when he was seen for pain in his buttocks and penis, with occasional pain on urination and no palpable mass on examination. He was assessed with a mild UTI. Later in November 1990 he was seen for 2 days dysuria with flank pain and a history of urinary tract infection (UTI) six weeks ago. In January 1991, his prostate was normal on examination. Later in February 1991 he underwent a cystoscopy which was normal, with microhematuria resolved. In an October 1991 periodic examination his prostate was smooth, non-tender and not enlarged. Subsequent examinations including on separation in February 1994 disclosed no abnormalities of the prostate. 

Post-service records show that in September 2005 the Veteran was seen for frequent urination and was assessed with polyuria. The symptoms of polyuria were said to be for approximately 2 years. In March 2006 he reported having polyuria for the last couple of years and nocturia 3-4 times a night, with PSA and glucose tests normal. He was diagnosed with polyuria. In March 2007 he was noted to have a diagnosis of benign prostate hypertrophy symptoms, well controlled with medication and his diagnosis included nocturia. Symptoms persisted in September 2007 with poor stream and difficulty urinating. In January 2008 his BPH was improved on increased dose of terazosin with a history of nocturia in June 2006 and September 2006 under good control with medication. He persisted with BPH symptoms with an August 2011 urology consult describing worsening symptoms of LUTS and was not emptying fully. He was assessed with BPH without urinary obstruction. He continued to have BPH on his diagnoses/problem lists in records as recently as September 2017. 

None of the records addressing the current BPH or its symptoms are noted to show evidence of a nexus between this diagnosis and any incident in service to include the treatment of acute UTIs treated in service (with normal prostate findings) or his claimed in-service exposure to hazardous materials and chemicals. Regarding the claimed exposure to chemicals, the Veteran’s September 2009 statement regarding this exposure was overly broad and failed to identify specific chemicals that were reportedly hazardous, and he later denied exposure to radiation in January 2010. Finally, neither correspondence to VA or statements to treating providers indicates continuity of symptomatology dating back to service.

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, the Board notes there is no credible medical or lay evidence showing a prostate disability manifested with continuous symptoms since service or otherwise related to any inservice incident, including any possible exposure to hazardous chemicals while performing his duties. Thus, the Board finds that the claim for service connection for BPH must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

16. Service connection for frostbite (now claimed as cold weather feet injury) is denied.

The Veteran contends that service connection is warranted for frostbite, claimed as a cold weather injury to his feet. He described receiving treatment for frostbite in service in his September 1994 original claim and described a severe cold weather injury to his feet in his August 2017 current claim and described symptoms of pain and soreness in his December 2017 NOD. In his August 2018 NOD with the higher-level review decision he described an altered gait bilaterally which he attributed to the cold weather injury to both feet.

STRs document a single episode in February 1985 when the Veteran was seen for complaints of pain to both feet. He had cold exposures to both feet “GTA” and was given Motrin 600. On examination the range of motion of both feet was limited, with slight dislocation to foot lateral side. He was tender to plantar distally with good capillary refill. There seemed to be evidence of slight soft tissue damage. He was assessed with exposure, cold. No other issues with his feet as far as cold injuries are shown in the rest of the STRs and periodical examinations including on separation in February 1994. 

Post-service records show no issues with the feet until a March 2011 podiatry consult reflecting complaints of discomfort on the bottom of his feet. He also stated that his feet get cold and hot. He described being on his feet all day long and he worked out on weekends. He was assessed with pes planus with excessive pronation and mild tinea pedis. No mention of a cold injury was made in his medical history. Physical examination revealed that protective sensation was intact using nylon monofilament and there was negative Tinel’s sign for tarsal tunnel. The assessment was pes planus with excessive pronation; mild tinea pedis. 

Treatment records dated in July 2016 addressing other matters are noted to include a history given of mild frostbite in his feet while in the Army in Germany, but with no findings or diagnoses regarding the feet. None of the other medical records disclose evidence of a foot disorder and/or residuals of the single episode of frostbite/ cold injury in February 1985. Moreover, neither correspondence to VA or statements to treating providers indicates continuity of symptomatology dating back to service.

In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

In this case, the Board notes there is no credible medical or lay evidence showing a current disability of cold injury residuals manifested with continuous symptoms since service or otherwise related to any inservice incident, including the acute and transitory episode of cold injury in-service in 1985. Thus, the Board finds that the claim for service connection for frostbite/cold injury residuals to his feet must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against each claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

17. Service connection for high cholesterol (now claimed as cholesterol condition) is denied.

The Veteran contends that service connection is warranted for a disorder manifested by high cholesterol (claimed as a cholesterol condition).

In a September 2009 statement, he described having worked and being stationed in toxic and polluted environments, having worked operating heavy equipment for over six years and being a chemical specialist for over 12 years. He alleged exposure to chemicals and radiation from chemical and radiological equipment. In this statement he also alleged being advised on having high cholesterol on many occasions but was never prescribed medication or otherwise treated for this condition. 

High cholesterol is also referred to as hypercholesterolemia or hyperlipidemia. Hypercholesterolemia is an “excess of cholesterol in the blood.” Dorland’s Illustrated Medical Dictionary p. 887 (32nd ed. 2012). Hyperlipidemia is “a general term for elevated concentrations of any or all of the lipids in the plasma, including hypertriglyceridemia, hypercholesterolemia, etc.” Id. at 891.

The Board observes that high cholesterol is shown by the medical evidence of record, including STRs and post service records. Of note in August 1986 he was noted to have increased triglycerides and attended class covering decreasing cholesterol, modified fat diet, decreased sweets emphasized. In February 1994, prior to retirement, his cholesterol labs were high at 203 and he was recommended a low cholesterol diet. 

Post-service records continue to show issues with cholesterol. In August 2008 while being followed for CAD, the Veteran’s doctor strongly advised his wife of all risk factors including cholesterol be monitored very carefully. 

More recently, he was noted to ongoing findings of high cholesterol in records from July 2016 diagnosed as dyslipidemia with high LDL, low HDL; and hyperlipidemia diagnosed in January 2017 and July 2017. 

However, service connection is only warranted where the evidence demonstrates a diagnosed disability. See Brammer, 3 Vet. App. at 225. “Disability” means impairment in earning capacity resulting from diseases and injuries and their residual conditions. See Hunt v. Derwinski, 1 Vet. App. 292, 296 (1991); 38 C.F.R. § 4.1. A symptom, without a diagnosed or identifiable underlying malady or condition, does not, in and of itself, constitute a “disability” for which service connection may be granted. High cholesterol is simply a laboratory test result, and not a disability in and of itself. See 61 Fed. Reg. 20440, 20445 (May 7, 1996). Moreover, the Veteran’s symptom of high cholesterol has not been attributed to a currently-diagnosed disability. As such, in this case, the Veteran’s high cholesterol cannot provide a basis for a valid claim for service connection. See Brammer, 3 Vet. App. at 225. 

Based on the foregoing, the reasonable doubt doctrine is not for application, and the Veteran’s claim of entitlement to service connection for high cholesterol is denied. See 38 C.F.R. §§ 3.102, 3.303.

18. Service Connection for PTSD is denied.

In addition to the general requirements for service connection, establishing service connection for PTSD requires medical evidence establishing a diagnosis of the condition in accordance with 38 C.F.R. § 4.125 (a); credible supporting evidence that the claimed in-service stressor occurred; and a link, established by medical evidence, between current symptomatology and the claimed in-service stressor. See 38 C.F.R. §§ 3.304 (f), 4.125. 

As for claimed stressors the Veteran is noted to have submitted a July 2010 Statement in Support of Claim for Service Connection for PTSD Secondary to Personal Assault and further contentions in a July 2010 mental health intake note alleging that he was subjected to a lengthy period verbal and even physical abuse by his supervisors at the time, with the mistreatment by his superior officers described in detail in the decision addressing his depression claim (issue 14 above), but with no actual assault reported. He later submitted an August 2017 Statement in Support of Claim for Service Connection for PTSD that described an incident said to have taken place in June 1976 at Fort Devens, when stationed with the 642nd Engineer, described as a near death experience when he nearly drowned during adventure training because he attempted swimming across a lake with fatigues and boots on. There is no evidence in the STRs or Service Personnel Records or elsewhere that corroborates this near drowning incident. 

With regard to the first element of service connection, the Board notes that the none of the medical evidence of record shows a diagnosis of PTSD or any other specified trauma and stressor related disorder. The lone diagnosed psychiatric disorder is shown to be a depressive disorder, which has been found to be non-service connected. Although the Veteran may sincerely believe that he has a diagnosis of PTSD related to his above claimed incidents in service, the evidence of record demonstrates otherwise. Moreover, as a layperson, he is not competent to offer a psychiatric diagnosis of PTSD. Rather, this question requires application of medical training or expertise to all pertinent evidence due to the complex nature of the question of the appropriate psychiatric diagnosis. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Consequently, his lay assertions of medical diagnosis and etiology cannot constitute evidence upon which to grant the claim for service connection. Lathan v. Brown, 7 Vet. App. 359, 365 (1995). Service connection is only warranted where the evidence demonstrates a diagnosed disability. See Brammer, 3 Vet. App. at 225. Again, no diagnosis of PTSD by competent medical evidence is of record. 

Based on the foregoing, the reasonable doubt doctrine is not for application, and the Veteran’s claim of entitlement to service connection for PTSD is denied. See 38 C.F.R. §§ 3.102, 3.303.

 

Eric S. Leboff

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD C. Eckart, Counsel